## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND,
## SOUTHERN DIVISION

| | |
|---|---|
| BRADLY K. BURNEY<br>6009 Rhode Island Avenue, Apt. 211<br>Washington, D.C. 20002, | *<br>*<br>* |
| | *     Civil Action No.: |
| MYRON CLAIBORNE<br>3706 Vega Road<br>Randallstown, Maryland 21133, | *<br>*<br>*<br>* |
| KENDEON D. LARES<br>14114 Jaeger Road<br>Clarksburg, Maryland 20871, | *<br>*<br>*<br>* |
| and | *<br>* |
| LEE P. NELSON<br>4532 Northwood Drive<br>Baltimore, Maryland 21239, | *<br>*<br>*<br>* |
| Plaintiffs,<br>v. | *<br>*<br>* |
| NATIONAL RAILROAD PASSENGER<br>CORPORATION ("AMTRAK")<br>50 Massachusetts Avenue, NE<br>Washington, D.C. 20002, | *<br>*<br>*<br>*<br>* |
| JARRETT ALSTON<br>Vice President – Transportation<br>National Railroad Passenger Corporation<br>50 Massachusetts Avenue, NE<br>Washington, D.C. 20002, | *<br>*<br>*<br>*<br>*<br>* |
| and | *<br>* |
| BRANDON HODGE<br>Assistant Superintendent<br>National Railroad Passenger Corporation<br>50 Massachusetts Avenue, NE<br>Washington, D.C. 20002, | *<br>*<br>*<br>*<br>*<br>* |
| Defendants. | * |

*************************************************************************

1

## COMPLAINT PURSUANT TO THE FEDERAL RAIL SAFETY ACT, 49 U.S.C. § 20109 AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, Bradly K. Burney, Myron Claiborne, Kendeon D. Lares, and Lee P. Nelson, by and through counsel, P. Matthew Darby, Esquire, and Darby Law Group, LLC, and file this Complaint against National Railroad Passenger Corporation ("AMTRAK"), Jarrett Alston – Vice President of Transportation (individually), and Brandon Hodge – Assistant Superintendent (individually) (collectively "Defendants"), pursuant to the Federal Rail Safety Act, 49 U.S.C. § 20109, and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Burney is a resident of the District of Columbia, Plaintiff Claiborne is a resident of the State of Maryland, Plaintiff Lares is a resident of the State of Maryland, and Plaintiff Nelson is a resident of the State of Maryland.

2. Defendant AMTRAK is a railroad corporation with its principle place of business in the District of Columbia, and was at all times relevant to the events described in this Complaint doing substantial business within the jurisdiction of this Court, engaging in the carrying of passengers for hire between and through Maryland and the several States of the United States.

3. This Court has original federal question subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 and the Federal Rail Safety Act, 49 U.S.C. § 20109 (d)(3).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 139l (b)(2) inasmuch as Defendant AMTRAK was at all times relevant to the events described in this Complaint doing substantial business within the judicial district of this Court, engaging in the carrying of passengers for hire between and through Maryland and the several States of the United States.

2

**STATEMENT OF FACTS**

5. This Complaint arises out of violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 ("FRSA"). On or about July 1, 2025, and July 2, 2025 (applicable to Plaintiff Burney), each Plaintiff engaged in protected activity and was subject as a result thereof to adverse actions within the meaning of the FRSA.

6. At the time of the FRSA violations discussed herein, Plaintiffs were employed by Defendant AMTRAK as conductors and qualify as employees within the meaning of the FRSA. Defendant AMTRAK is a railroad carrier engaged in interstate or foreign commerce and qualifies as an employer within the meaning of the FRSA.

7. Plaintiffs engaged in activity protected by the FRSA and were subsequently subjected to adverse and discriminatory action as a result of that protected activity.

8. Plaintiffs' protected activity concerned reporting, in good faith, a hazardous safety condition, a protected activity pursuant to 49 U.S.C. § 20109 (b)(1)(A) and conditionally refusing to perform work when confronted by a hazardous safety condition related to the performance of their duties, done in good faith where no reasonable alternative to the refusal was available, and where a reasonable individual would conclude that the hazardous condition presented an imminent danger of death or serious injury and the urgency of the situation did not allow sufficient time to eliminate the danger without their refusal, all of which was well known to Defendants, and which constituted protected activity pursuant to 49 U.S.C. § 20109 (b)(1)(B) and 49 U.S.C. § 20109 (b)(2)(A), (B) & (C).

9. Defendant Jarrett Alston is employed as Vice President of Transportation for Defendant AMTRAK and initiated and is responsible for the adverse actions taken against Plaintiffs and is therefore liable to Plaintiffs pursuant to 49 U.S.C. § 20109 (a).

10. Defendant Brandon Hodge is employed as an Assistant Superintendent for Defendant AMTRAK and initiated and is responsible for the adverse actions taken against Plaintiffs and is therefore liable to Plaintiffs pursuant to 49 U.S.C. § 20109 (a).

11. Defendant AMTRAK is vicariously liable to Plaintiffs for the violations of the FRSA committed by Defendants Alston and Hodge, among other employees of Defendant AMTRAK not named as Defendants, who were acting within the scope of their employment at the time of the adverse actions described herein.

12. At the time of the factual allegations contained herein, Plaintiff Burney had worked as a conductor for 11 years until he was terminated from his employment in violation of the FRSA on July 2, 2025. During his 11 years of employment as a conductor, he had never been asked to perform the tasks described herein, nor had he been adequately or properly trained on how to safely perform said tasks and provided with the necessary tool to perform the work.

13. At the time of the factual allegations contained herein, Plaintiff Claiborne had worked as a conductor for 21 years until he was terminated from his employment in violation of the FRSA on July 1, 2025. During his 21 years of employment as a conductor, he had never been asked to perform the tasks described herein, nor had he been adequately or properly trained on how to safely perform said tasks and provided with the necessary tool to perform the work.

14. At the time of the factual allegations contained herein, Plaintiff Lares had worked as a conductor for 18 years until he was terminated from his employment in violation of the FRSA on July 1, 2025. During his 18 years of employment as a conductor, he had never been asked to perform the tasks described herein, nor had he been adequately or properly trained on how to safely perform said tasks and provided with the necessary tool to perform the work.

15. At the time of the factual allegations contained herein, Plaintiff Nelson had worked as a conductor for 25 years until he was terminated from his employment in violation of the FRSA on July 1, 2025. During his 25 years of employment as a conductor, he had never been asked to perform the tasks described herein, nor had he been adequately or properly trained on how to safely perform said tasks and was not provided with the necessary tool to perform the work. Moreover, Plaintiff Nelson had been a certified trainer of Conductors for Defendant AMTRAK for 20 years and developed the curriculum for said training with the approval of Defendant AMTRAK. The training approved by Defendant AMTRAK did not include training for the tasks described herein.

16. On the morning of July 1, 2025, each Plaintiff (with the exception of Plaintiff Burney) was assigned to work as a conductor on various trains that were scheduled to depart that morning. With regard to Plaintiff Burney, the facts leading to his adverse action occurred from July 1, 2025, into July 2, 2025.

17. On the morning of July 1, 2025, each Plaintiff was, in turn, requested by Defendants to remove high voltage 480 VAC cables from train 67. During their many collective years of service with Defendant AMTRAK, none of the Plaintiffs had ever performed the task in question, had not been adequately and properly trained to perform the task in question, had not been provided with the tool necessary to perform the task in question, and were not familiar with Mechanical Bulletin MD-MEC-23-12 which dealt with the procedures for the installation and removal of the subject 480 VAC cables. In addition, the task in question was the subject of an AMTRAK Safety Alert pertaining to the cables in question, which specifically authorized the Plaintiffs to exercise a "good faith" challenge to "Working On or About 480 Volts." Heretofore, the task in question had always been performed by employees of the Defendants' Mechanical

Department, who received adequate and proper training with respect to the task in question and were provided with the appropriate tool to perform the task safely.

Each Plaintiff reported this hazardous safety issue, in good faith, to Defendants, and was nevertheless requested to perform the hazardous task in question. Despite the reporting of the unsafe condition, a protected activity pursuant to 49 U.S.C. § 20109 (b)(1)(A), Plaintiffs were sequentially requested to perform the hazardous task in question, at which time they each held a good faith belief that there was no reasonable alternative to conditionally refusing to perform the hazardous task in question, and any reasonable individual in Plaintiffs' positions would have concluded that the hazardous task in question presented an imminent danger of death or serious personal injury and that the urgency of the situation did not allow sufficient time to eliminate the danger without conditional refusal, a situation with which the Defendants were well aware, and which constituted protected activity pursuant to 49 U.S.C. § 20109 (b)(1)(B) and 49 U.S.C. § 20109 (b)(2)(A), (B) & (C).

Plaintiff Burney experienced a similar set of circumstances as the other Plaintiffs, with the only relevant exception being that the events occurred over July 1, 2025, into July 2, 2025.

Plaintiffs' contentions are verified by reference to Defendants' Mechanical Bulletin MD-MEC-23-12 which addresses the procedures for the installation and removal of the subject 480 VAC cables, issued on April 21, 2023, which states in part:

> ELECTRICAL CABLES CARRY VOLTAGE AND CURRENT LEVELS THAT ARE DANGEROUS TO LIFE. ALL POWER MUST BE ELIMINATED FROM CABLES BEFORE REMOVING OR CONNECTING CABLES. FAILURE TO DO SO COULD RESULT IN SEVERE INJURY OR DEATH.

In addition, Mechanical Bulletin MD-MEC-23-12 requires members of the Defendants' Mechanical Department to utilize a special tool to perform the task Plaintiffs were ordered to perform and provides detailed instructions on how to safely perform the task. The Defendants' Mechanical Department personnel were "required to read thoroughly and understand the information contained" in the Bulletin. Nevertheless, this is the same task that Plaintiffs were requested to perform despite the fact that: 1. They had never performed the task before; 2. Had not been adequately and properly trained on how to perform the task; 3. Had not been provided a copy of Mechanical Bulletin MD-MEC-23-12; 4. Had not been provided the tool addressed by Mechanical Bulletin MD-MEC-23-12; and 5. Defendants were well aware that the "Electrical cables carry voltage and current levels that are dangerous to life."

In addition, the hazardous task was the subject of an AMTRAK Safety Alert pertaining to the cables in question, which specifically authorized the Plaintiffs to exercise a "good faith" challenge to "Working On or About 480 Volts." Despite the aforementioned provisions of the FRSA and Defendant AMTRAK's own rule that allowed for the Plaintiffs to exercise a "good faith" challenge to performing the work in question, which upon exercising those rights, nevertheless lead to their termination.

18. Each Plaintiff (with the exception of Plaintiff Burney) were requested to perform the hazardous task in question by Trainmaster John Green ("Mr. Green"). Upon reporting the hazardous condition and conditionally refusing to perform the task, Mr. Green conferred with Defendant Brandon Hodge, who upon information and belief, conferred with Defendant Jarrett Alston, after which the Plaintiffs were each terminated from employment in succession. Upon information and belief, the final decision to terminate the Plaintiffs was made by Defendants Alston and Hodge, an action taken in direct violation of the Plaintiffs' rights under the FRSA.

Plaintiff Burney experienced a similar set of circumstances as the other Plaintiffs, with the only relevant exception being that the events occurred over July 1, 2025, into July 2, 2025. Upon information and belief, the final decision to terminate Plaintiff Burney was also made by Defendants Alston and Hodge, an action taken in direct violation of the Plaintiff Burney's rights under the FRSA.

19. After each Plaintiff, in turn, exercised their aforementioned rights pursuant to the FRSA, each was terminated on the spot as aforementioned, required to turn over their AMTRAK equipment and identification cards, and taken out of service without pay pending an investigation. The Plaintiffs received letters of investigation pursuant to the Railway Labor Act, in which the Defendants sought final termination from employment for each of the Plaintiffs.

20. Defendants were well aware of the fact that the Plaintiffs had not been adequately and properly trained to perform the task in question, nor were they provided with the proper tool to safely perform the task. Well before the circumstances described herein, the Defendant AMTRAK conferred with the Plaintiffs' local union leadership regarding the fact that this new task was going to be added to duties assigned to conductors, including the Plaintiffs. As part of the implementation of this newly assigned task, Defendant AMTRAK and the local union leadership agreed that adequate and proper training was necessary. In order to ensure an orderly and safe implementation of this new task into the duties of the conductors, including Plaintiffs, it was agreed that the training on the new task was necessary, and that the implementation of the new task into the duties of the conductors would take place after the week of the July 4th holiday. Nevertheless, Defendant AMTRAK implemented the new task without the agreed upon training and prior to the schedule agreed upon, thereby placing the Plaintiffs in the position of

being required to perform the task without the training agreed upon as necessary by Defendant AMTRAK and necessary for the safe performance of the task by Plaintiffs.

21. With respect to Plaintiff Burney, Defendant AMTRAK conducted an investigation hearing concerning the charges leveled against him. The Lead Hearing Officer found that Defendants' allegations against Plaintiff Burney were proven, and he was terminated as a result.

22. With respect to Plaintiff Claiborne, Defendant AMTRAK conducted an investigation hearing concerning the charges leveled against him. The Lead Hearing Officer found that Defendants' allegations against Plaintiff Claiborne were not proven, and Plaintiff Claiborne was returned to service with back pay.

23. With respect to Plaintiff Lares, Defendant AMTRAK conducted an investigation hearing concerning the charges leveled against him. The Lead Hearing Officer found that Defendants' allegations against Plaintiff Lares were proven, and he was terminated as a result.

24. With respect to Plaintiff Nelson, Defendant AMTRAK conducted an investigation hearing concerning the charges leveled against him. After the investigation hearing, a decision was issued in which Lead Hearing Officer, Jason Han, of the Amtrak Office of Disciplinary Investigations, exonerated Plaintiff Nelson of all charges by Decision dated July 19, 2025. In that decision, Hearing Officer Han stated:

> I do not find that the Carrier has established by substantial evidence that you violated the aforementioned policies. Your GFC was valid; the task was inherently dangerous, you were never trained on how to do it, and it is at least related to shoving… Moreover these facts demonstrate that conductors in Washington Terminal had no previous knowledge or training on how to perform this task. Furthermore, the job aid video cannot constitute adequate training because… It assumes that you had already been trained, hence its short run time of 1 minute and 16 seconds. It is a refresher video, not a training video.

Subsequent to this decision, Plaintiff Nelson was returned to service with back pay.

25. As previously stated, the disciplinary charges against Plaintiffs Nelson and Claiborne were determined to be not proven, and as a result both were returned to service with back pay. At the investigative hearings for both individuals, Mr. Green was called to testify as a witness by Defendant AMTRAK. Upon information and belief, Mr. Green's testimony was deemed to be favorable to Plaintiffs Nelson and Claiborne. Mr. Green was not a witness relevant to the determination of Plaintiff Burney's disciplinary charges, and therefore he was not called as a witness. However, Defendant AMTRAK did not call Mr. Green as a witness for Plaintiff Lares' investigative hearing and refused to produce him as a witness at the request of Plaintiff Lares' union representative. In fact, upon information and belief, Mr. Green was instructed to not appear and to not respond to any communication from Plaintiff Lares' union representative.

26. In addition, while the charges were pending against Plaintiff Nelson, he emailed several individuals in Defendants' management to alert them to the developing situation. In those emails, Plaintiff Nelson reiterated the factual allegations that are at the heart of the discriminatory actions taken by his more immediate managers.

27. After his disciplinary hearing, Plaintiff Nelson returned to work on July 21, after which he took several days of earned vacation starting August 1. Upon his return to work on August 7, he was called into the office of Assistant Superintendent Brandon Hodge, one of the Defendants in this claim and one of the original instigators of the discriminatory actions against him. In the ensuing meeting, Defendants doubled-down on their discriminatory tactics by again removing Plaintiff Nelson from service.

28. On August 8, 2025, Defendants sent Plaintiff Nelson another charge letter setting a second investigation hearing for August 15, 2025. With regard to the accusations against him this time, the charge letter states as follows: "It is alleged that on July 10, 2025, you were dishonest

10

when you sent email to Amtrak executives that provided false information regarding your training history. Management's first knowledge was July 25, 2025." Defendants were again threatening termination.

29. The aforementioned emails sent to management by Plaintiff Nelson were factually accurate and substantiated by the fact that Plaintiff Nelson was exonerated by Hearing Officer Han, who made substantially the same factual findings that Plaintiff Nelson cited in his emails. Moreover, many rank-and-file employees of Defendant AMTRAK and their Union Representatives email upper management to make them aware of issues they are facing. Plaintiff Nelson has emailed upper management on numerous occasions in the past, as have multiple other employees, without repercussions.

30. The fact that Defendants prevented Mr. Green from testifying in the investigative hearing for Plaintiff Lares and doubled-down on their discriminatory actions against Plaintiff Nelson highlight their complete and utter disregard for the rights of all the Plaintiffs under the FRSA, warranting an award of punitive damages to the fullest extent permitted under the FRSA.

## RELIEF SOUGHT

WHEREFORE, in order to encourage employees to freely report, in good faith, hazardous safety or security conditions and, in good faith and with reasonable basis, to conditionally refuse to perform work that is objectively hazardous, without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, Plaintiffs demand Judgment under the FRSA for all relief necessary to make them whole against each of the named Defendants, including but not limited to:

    a. Expungement of all references to disciplinary action related to the discrimination for each Plaintiff;

    b. Reinstatement with the same seniority status Plaintiffs would have had but for the discrimination;

    c. Lost benefits with interest for each Plaintiff;

    d. Lost wages with interest for each Plaintiff;

    e. Compensatory damages for medical expenses incurred due to Defendants' conduct for each Plaintiff;

    f. Compensatory damages for economic losses for each Plaintiff due to Defendants' conduct;

    g. Compensatory damages for mental anguish, emotional distress, and the physical results thereof for each Plaintiff due to Defendants' conduct;

    h. The statutory maximum of punitive damages pursuant to 49 U.S.C. § 20109 (e)(3) for each Plaintiff;

    i. Special damages for all litigation costs including expert witness fees and attorney fees for each Plaintiff; and

    j. All other relief necessary to make each of the Plaintiffs whole.

**PLAINTIFFS DEMAND TRIAL BY JURY**

        Respectfully submitted,


        */S/ P. Matthew Darby*
        P. Matthew Darby, Esquire
        Darby Law Group, LLC
        201 International Circle
        Suite 500
        Hunt Valley, Maryland 21030
        833-601-7245
        matt@darby-lawgroup.com


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that on this ____ day of February, 2026, a copy of the forgoing Complaint Under Federal Rail Safety Act 49 U.S.C. § 20109 was sent to:


        Matthew Strauskulage
        Landman Corsi Ballaine & Ford P.C.
        1617 JFK Boulevard, Suite 955
        Philadelphia, PA 19103
        646-467-6018
        *Attorney for Defendants*


        */S/ P. Matthew Darby*
        P. Matthew Darby, Esquire